UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
:
BALBIR SINGH, :
: Civil Action No.: 1:21-cv-08341
Plaintiff, :
:
- against - : **COMPLAINT**
:
BEVERLEY HOTELS ASSOCIATES, LLC : **JURY TRIAL DEMANDED**
d/b/a NIGHT HOTEL BROADWAY and :
DREAM HOTEL GROUP, LLC., :
:
Defendants. :
:
------------------------------------------x

Plaintiff Balbir Singh, by and through his attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges upon knowledge and information and belief as follows:

## NATURE OF ACTION

1. Plaintiff Balbir Singh ("Mr. Singh" or "Plaintiff") was jointly employed by Defendant Beverley Hotels Associates, LLC d/b/a Night Hotel Broadway, Inc. and Defendant Dream HotelGroup, LLC., (collectively referred to as "Defendants" or "the Hotel"), as a Chief Engineer.

2. In violation of federal and state labor laws, Defendants maintained a policy and practice of requiring Plaintiff to work in excess of 40 hours a week without paying him the overtime compensation to which his was entitled. Plaintiff now bring this action to recover unpaid overtime premiums, unpaid straight time/gap time wages, liquidated damages, interest, attorneys' fees, and costs pursuant to either or both the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and the New York Labor Law §§ 190 *et seq*.("NYLL").

3. Moreover, Plaintiff brings this action against Defendants for employment

discrimination based on his age, in violation of the New York Human Rights Law, New York Statutes Executive Law, Art. 15, vol. 14, §§ 209-301 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, § 8-107 *et. seq.* ("NYCHRL"). Mr. Singh seeks monetary and emotional damages, pursuant to the NYSHRL and the NYCHRL, for injuries that he has sustained as a result of Defendants' unlawful discrimination.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 207 *et seq*.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because the wage violations and Defendants' discriminatory actions which give rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff Balbir Singh is a former Chief Engineer employed by Defendants.

9. Presently, and at all relevant times, Mr. Singh resides at 2544 72nd Street, East Elmhurst, New York 11370.

10. Mr. Singh had worked as the Chief Engineer at various Hotels under Defendant Dream Hotel Group's ownership and management.

11. Since 1989, Mr. Singh has worked for Defendant Dream Hotel Group at approximately ten (10) of their various locations for the past 32 years.

12. For the past 2-3 years, Mr. Singh worked at the Night Hotel Broadway located at 215 West 94th Street, New York, NY 10025.

13. Dream Hotel Group is a New York corporation with its headquarters and principal place of business at 200 West 55th Street, New York, New York 10019.

14. Defendant Beverley Hotels Associates d/b/a Night Hotel Broadway (Defendant Night Hotel Broadway) is a domestic limited partnership incorporated under thelaws of the state of New York, with its principal place of business and corporate headquarters at 200 West 55th Street, New York, New York 10019.

15. At all times relevant to this action, employees of Dream Hotel Group and Night Hotel Broadway have communicated the status and terms and conditions of Plaintiff's employment to him.

16. Defendant Dream Hotel Group maintains offices in New York, Virginia, Florida, Bangkok, and India, serving clients worldwide.

17. At all times relevant to this action, upon information and belief, Defendants employed approximately 1,500 employees and its annual gross revenue exceeded well over $500,000.

18. Defendants, by and through its agents, regularly transact significant business within the state of New York and derives substantial revenue from services rendered in New York State.

19. At all times relevant to this action, Defendants met the definition of Plaintiff's "employer" under all applicable statutes, including but not limited to the FLSA, NYLL, NYSHRL, and NYCHRL.

20. At all times relevant to this action, Defendants were Plaintiff's employers, possessing the authority to hire and fire Plaintiff, control his terms and conditions of employment, and determine the rate and method of any compensation in exchange for his employment.

## JOINT EMPLOYER FACTUAL ALLEGATIONS

**Defendant Dream Hotel Group and Defendant Night Hotel Broadway Are Joint Employers**

21. Dream Hotel Group, formerly known as Hampshire Hotels Management, LLC, was founded in 1986 as a hotel management company. Today, it owns, operates, and manages several hotel properties, including but not limited to The Chatwal New York, Dream Midtown, The Time New York, and Night Hotel Broadway, where Plaintiff worked.

22. Dream Hotel Group's principal place of business and headquarters is located at 200 West 55th Street, New York, New York 10019.

23. Night Hotel Broadway is a New York incorporated domestic limited partnership and shares its principal place of business and headquarters with Dream Hotel Group at 200 West 55th Street, New York, New York 10019.

24. Dream Hotel Group owns and manages Night Hotel Broadway, and oversees its day-to-day operations, including the hiring, firing, and determination of wages paid to its employees.

25. The two separately identified entities, Night Hotel Broadway and Dream Hotel Group, are together part of a single integrated enterprise or are joint employers, as Defendants have interrelated operations, common management, centralized control of labor relations, common ownership, and financial control.

26. For instance, Dream Hotel Group provided management services for Night Hotel

Broadway through its Executive Vice President and Director of Operations, Manny A.S. Chohan, and Lynn Griffith, Vice President of Human Resources.

27. Similarly, while Plaintiff was the Chief Engineer and on the payroll at Night Hotel Broadway, he had been an employee of Dream Hotel Group for 32 years and at approximately ten of their locations.

28. Further, Defendant Dream Hotel Group had immediate control over Night Hotel Broadway employees as evinced by the fact that Plaintiff was placed on a short-term layoff, and then longer term lay-off, by Mr. Chohan.

29. Although Plaintiff was notified of his termination in a letter from Tanya Lessert, a Night Hotel Broadway Manager, he simultaneously was told to reach out to a Dream Hotel Group employee, Ms. Griffith, if he had questions.

30. As such, Plaintiff was required to answer to and communicate with Dream Hotel Group employees regarding the terms and conditions of his employment.

31. At all times material, Plaintiff was an employee of Defendant Dream Hotel Group, who held complete supervisory authority over Plaintiff.

32. At all times material, Plaintiff was an employee of Night Hotel Broadway.

## WAGE AND HOUR FACTUAL ALLEGATIONS

**Plaintiff Regularly Worked Through His 1-Hour Lunch Break**

33. Mr. Singh was regularly *__scheduled__* to work 35 hours each workweek.

34. Specifically, Mr. Singh was scheduled to work an 8-hour shift (8:00am to 4:00pm) with a 1-hour unpaid lunch break.

35. However, Mr. Singh worked through his lunch hour nearly every single day, without receiving any compensation, resulting in 5 hours of unpaid hours each week and a total

of 40 hours that he actually worked each week.

36. In total, there are five Engineers that worked for the Night Hotel Broadway at 215 West 94th Street, New York, NY 10025.

37. Amongst these Engineers, two were assigned morning shifts and worked 7:00 AM to 3:00 PM, while two were assigned night shifts and worked from 3:00 PM to 12:00 AM.

38. Mr. Singh, as the Chief Engineer, worked from 8:00 AM to 4:00 PM.

39. As the "Chief Engineer," Mr. Singh's job duties required that he provide support for the Hotel, which included performing blue-collar, hands on, and labor-intensive tasks, such as: making repairs, conducting painting jobs, and updating/maintaining 360 electrical lock pads, one per each room at the Hotel.

40. On a daily basis, during his unpaid lunch hours, Mr. Singh was required to remain on-call and be ready to perform any of his aforementioned duties.

41. During his lunch break, Mr. Singh was restricted to his work site, as he was required to be seated and logging/tending to calls at the Hotel for the entirety of his one-hour lunch break; this amounted to 5 additional hours of unpaid time that Mr. Singh worked per week.

42. Mr. Singh would receive repair requests from the front desk and housekeeping managers throughout his lunch breaks.

43. Because each repair had to be completed before new guests checked in, the nature of these requests was urgent.

44. Mr. Singh was the only Engineer on staff at Night Hotel Broadway who knew how to repair the electrical locks on each individual room and make other types of electrical repairs.

45. For example, Mr. Singh was the sole employee responsible for repairing light fixtures and circuit breakers throughout the Hotel.

46. Therefore, Mr. Singh was personally responsible for maintaining, repairing, and

ensuring the functionality of 360 locks, one per each room at the Hotel, and all other crucial electrical repairs to allow for new guests to arrive and utilize their reserved rooms.

47. Because there were no other employees assigned to perform these specific tasks, Mr. Singh had no choice but to tend to the repairs, regardless of his break schedule.

48. In accordance with *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 65 (2d Cir. 1997), during Mr. Singh's lunch break, he was "restricted to the site for the purpose of performing valuable security service for the company," his on-site presence was "solely for the benefit of the employer," and, in Mr. Singh's absence, "the company would have to pay others to perform those same services."

49. By not compensating Mr. Singh for work he performed during his lunch hours, the Hotel was effectively receiving free labor.

50. In Mr. Singh's absence, the Hotel would have had to pay others to perform such services during his daily lunch hours.

51. Thus, Mr. Singh was owed wages for his gap time hours, during which he was mandated to continue performing his urgent work duties.

52. Therefore, as Mr. Sigh worked through his lunch breaks as the only employee capable of repairing urgent matters, his 35-hour work week was, in actuality, 40 hours.

**Plaintiff Singh Consistently Worked Overtime Hours while Employed with Defendants**

53. Defendants mistakenly classified Mr. Singh as exempt under the FLSA and NYLL and thus not entitled to overtime pay and other associated protections.

54. However, Mr. Singh was paid hourly; his pay stubs clearly state "paid on hourly basis" at a rate of $33.02 per hour.

55. Thus, he was non-exempt from overtime pay under the FLSA and the NYLL because he was not paid on a salary basis, as required by both laws.

56. Moreover, Mr. Singh's duties included manual labor and repairs for the Hotel, including but not limited to repairing the electrical locks on each individual room and making other electrical repairs including fixing light fixtures and circuit breakers throughout the Hotel.

57. It is common industry knowledge and clear from United State Department of Labor regulations and courts interpreting such regulations that "non-management employees in ***maintenance***, construction and similar occupations such as carpenters, ***electricians,*** mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers, laborers ***and other employees who perform work involving repetitive operations with their hands, physical skill and energy are not exempt under this section no matter how highly paid they might be.***" 29 C.F.R. 541.601(d) (emphasis added).

58. As a non-exempt employee, Mr. Singh was eligible to receive overtime compensation under the FLSA and NYLL for the work he performed in excess of 40 hours per workweek at the overtime premium rate of one and half times his regular rate of pay.

59. As the Hotel constantly needed repairs in order for new clients to utilize its services, Mr. Singh's tasks were urgent, time sensitive, and essential to the Hotel's basic functionality.

60. For at least two days every week, Mr. Singh would receive calls requesting urgent repairs in the Hotel that would require Mr. Singh to continue working after his shift ended at 4:00pm for, for approximately one hour each day.

61. Regardless of the time, Mr. Singh was unable to abandon the repairs because doing so would disrupt the overall functionality of the Hotel with bookings and incoming clients.

62. Mr. Singh's superiors were, or should have been, well aware of Mr. Singh's 2 extra hours of work per week.

63. Mr. Singh was the only Engineer capable of making certain repairs, such as those pertaining to electric door locks and other electrical matters.

64. Despite other Engineers being on staff, Mr. Singh was solely responsible for these specific repairs, as the other employees did not know how to make these specific repairs.

65. Therefore, as requests from housekeeping and the front desk were recurring and consistent, Defendants should have had knowledge of Mr. Singh's overtime contributions, as the Hotel continued to run and function seamlessly with Mr. Singh's contributions.

66. Despite the fact that Defendants were or should have been fully aware of the overtime hours Mr. Singh worked, the Hotel never compensated Mr. Singh at an overtime premium rate for the hours worked in excess of his 40 hours per week.

67. An employee must be compensated for time worked outside of a scheduled shift, regardless if the employer explicitly requested the employee work during that time, "so long as the employer knows or has reason to believe that the employee is continuing to work and that work was "suffered or permitted" by the employer." *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 718 (2d Cir. 2001) (citing 29 C.F.R. § 785.11 (internal quotations eliminated)); 29 U.S.C. § 203(g).

68. Defendants never instructed Mr. Singh to not complete repairs when they had full knowledge of Mr. Singh's schedule and thus permitted him to work.

69. Defendants' conduct in failing and refusing to pay Mr. Singh overtime compensation in violation of the FLSA and the NYLL was willful and in bad faith and has caused significant damages for Mr. Singh.

**Defendants' Failure to Track Mr. Singh's Work Hours**

70. Defendants regularly scheduled Mr. Singh for a 35-hour workweek and only paid him for the hours they scheduled him to work, as opposed to the actual number of hours he worked.

71. Defendants failed to accurately track the number of hours Mr. Singh's actually

9

worked throughout his entire employment.

72. Other hourly-paid employees were instructed to clock in/out while Mr. Singh was specifically instructed not to.

73. Therefore, Mr. Singh was not even afforded the opportunity to accurately report the hours he worked on the Defendants' time keeping mechanism.

74. Mr. Singh always worked his regularly scheduled 35-hour workweek, and in addition to his regular 35 hours, Mr. Singh typically worked at least an additional hour each day beyond his 7-hour shift, as well as an extra hour around 2 days a week, totaling at least 7 hours over his regular 35-hours per week for the duration of his employment, for which he was not compensated.

75. For example, Mr. Singh recalls many weeks in which he worked more than 40-hour workweeks.

76. Specifically, there were numerous weeks where Mr. Singh did not take any vacation or sick days, and as such worked the following hours: 35 scheduled working hours; 5 hours monitoring, logging, and answering calls during his unpaid lunch break; and 2-hours a week of completing repairs during overtime hours.

77. During the above-described weeks, Mr. Singh worked 5 hours of unpaid straight time and 2 hours of unpaid overtime.

78. This is just one of many examples of the gap time and overtime hours that Mr. Singh worked but was not compensated for.

## AGE DISCRIMINATION FACTUAL ALLEGATIONS

### Mr. Singh has Faced Age Discrimination while Employed by the Hotel

79. On April 5, 2020, the Hotel placed Mr. Singh on a temporary, short-term layoff in light of the COVID-19 pandemic.

80. On June 5, 2020, Mr. Singh received a notice from Manny A.S. Chohan, the Executive Vice President and Director of Operations at Dream Hotel Group, regarding his employment status, informing him that they were going to transition him from a short-term layoff to a longer-term layoff, effective June 9, 2020.

81. On July 24, 2020, Mr. Singh received another notice from Night Hotel Broadway noting that he was still on "unpaid leave" and it was still unclear when he could return to work; however, Night Hotel Broadway indicated Mr. Singh would remain on his employer's health insurance plan.

82. In the notice, Mr. Singh was directed to reach out to Lynn Griffith from the Dream Hotel Group for any questions.

83. Upon receiving this July 24, 2020 notice, Mr. Singh returned to the Hotel to his locker to collect his items.

84. At the time, Mr. Singh was 70 years old.

85. In the locker room, Mr. Singh met the younger employee who apparently replaced Mr. Singh as Chief Engineer of the Hotel.

86. Upon information and belief, this new employee was approximately 32 years old, nearly half of Mr. Singh's age.

87. Mr. Singh spoke with this new and younger employee in the locker room as he retrieved his times and learned that the new employee had little to no prior work experience in the hotel industry before this job.

88. Mr. Singh was shocked and surprised by this news, as he was ready and willing to return to work to his position at the Hotel, only to find he was replaced by a younger, new and inexperienced employee.

89. Meanwhile, not only did the Hotel fail to relieve Mr. Singh from his temporary

unpaid leave, but the Hotel had also just informed him that they were extending his unpaid leave indefinitely despite the Hotel's resumed operations and reimplementation of services.

90. It was made abundantly clear that the Hotel continued to provide services to the public after Mr. Singh's leave was extended.

91. Therefore, there was no valid reason in keeping Mr. Singh from returning to the Hotel as Chief Engineer.

92. Additionally, Mr. Singh later learned that the Hotel hired new employees while he remained on unpaid leave.

93. Due to his nearly 32 years of experience as Chief Engineer across multiple Hotels owned by Dream Hotel Group, in conjunction with the fact that Mr. Singh was the only Engineer who knew how to repair the electric lock pads utilized by the Hotel where he last worked, Mr. Singh was an invaluable and exceptional employee.

94. The Hotel clearly discriminated against Mr. Singh whereby they have left him in an indefinite limbo period, continued to this day, by placing him on an unpaid leave with no indication of a future return date.

95. Clearly the Hotel had no expectation of brining Mr. Singh back from leave as they have already replaced him with a younger employee with almost no experience in the industry.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Failure to Pay Overtime Compensation in Violation of the FLSA)**

96. Plaintiff repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

97. At all relevant times, Plaintiff regularly worked in excess of forty (40) hours per week.

98. At all relevant times, Plaintiff was an employee and Defendants have been an

employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

99. At all relevant times, Defendants were engaged in commerce or in an industry or activity affecting commerce.

100. Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r). The gross annual income, upon information and belief, for the enterprise exceeds $500,000.

101. Defendants knowingly and intentionally failed to pay Plaintiff overtime at the rate of one and one-half times his regular rate of pay for each hour worked in excess of forty (40) hours per week in violation of 29 U.S.C. § 201 *et seq*.

102. By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff, Defendants have failed to make, keep, and preserve records with respect to Plaintiff sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq*.

103. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), and such other legal and equitable relief as the Court deems just and proper.

104. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants damages in the amount of unpaid overtime compensation, liquidated damages, attorneys' fees and costs, and interest.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Failure to Pay Overtime Compensation in Violation of the NYLL and N.Y.C.R.R.)**

105. Plaintiff repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

106. At all relevant times, Plaintiff regularly worked in excess of forty (40) hours per

week.

107. At all relevant times, Plaintiff was an employee and Defendants have been an employer within the meaning of the NYLL.

108. Defendants knowingly and intentionally failed to pay Plaintiff overtime at a rate of one and one-half times his regular rate for each hour worked in excess of forty (40) hours per week in violation of the New York Labor Law Article 19, §§ 650 *et seq*. and the supporting regulation of the New York State Department of Labor, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

109. Defendants' failure to pay Plaintiff's overtime premiums was willful within the meaning of the N.Y. Lab. Law § 663.

110. Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants damages in the amount of unpaid overtime compensation, liquidated damages, attorneys' fees and costs, and interest.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Failure to Pay Gap-Time Compensation in Violation of the NYLL § 190 *et. seq*.)**

111. Plaintiff repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

112. At all relevant times, Plaintiff was an employee and the Defendants have been an employer within the meaning of the NYLL.

113. NYLL § 663(1) states that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled . . . he or she shall recover in a civil action the amount of any such underpayments"

114. Unlike an overtime claim, "a gap-time claim requires no predicate showing of minimum hours worked; rather, an allegation of hours worked without compensation may give

rise to a gap-time claim." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d at 202.

115. Mr. Singh consistently performed work during his one-hour lunch breaks without any form of compensation.

116. Defendants only paid Plaintiff for the 35 hours he worked outside of his one-hour lunch breaks each workweek.

117. Plaintiff has asserted facially plausible gap-time claims under § 663(1) of the NYLL, of which he has worked compensable time for which he was not properly paid.

118. The NYLL "provides for full recovery of all unpaid straight-time wages owed." *Hintergerger v. Catholic Health System, No. 08–CV–948S, 2012 WL 125152, at *5 (W.D.N.Y. Jan. 17, 2012)*.

119. Pursuant to the agreed-upon terms of his employment, Defendants were required to pay Plaintiff a set hourly rate for *all* hours worked.

120. Defendants failed to pay Plaintiff his agreed-upon hourly wages *i.e.*, gap time/straight time wages to which he is entitled to under the NYLL.

121. Throughout its knowing and intentional failure to pay Plaintiff agreed-upon wages *i.e.*, gap time/straight time wages, Defendants have willfully violated the NYLL.

122. Due to Defendants' willful NYLL violations, Plaintiff is entitled to recover from Defendants damages in the amount of owed gap time/straight times wages, liquidated damages, attorneys' fees and costs, and interest, as provided for under the NYLL

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Failure to Furnish Accurate Wage Statements in Violation of NYLL §195(3))**

123. Plaintiff repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

124. At all relevant times, Plaintiff was an employee and the Defendants have been an employer within the meaning of the NYLL.

125. The recordkeeping provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants.

126. Defendants did not provide Plaintiff with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

127. NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

128. As a result of Defendants' unlawful conduct, Plaintiff is entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663. *See Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 466 (E.D.N.Y. 2015) (denying motion to dismiss and holding that "[t]he plain language of § 195(3) requires wage statements furnished to employees to include a statement of 'the number of overtime hours worked'… [and thus,] the 'number of overtime hours' that appears on the wage statement should include every hour actually 'worked' by the employee.) (emphasis in original).

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Age Discrimination in Violation of the New York Human Rights Law, New York Statutes Executive Law, Art. 15, vol. 14, §§ 209-301 *et seq.* ("NYSHRL"))**

129. Mr. Singh hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

130. Mr. Singh was an "employee" within the meaning of the NYSHRL.

131. Defendants were Mr. Singh's "employer" within the meaning of the NYSHRL.

132. Mr. Singh is, and has been at all relevant times, qualified for his position with Defendants.

133. Defendants' decision to withhold Mr. Singh's reinstatement after an unpaid leave and replace his position with a younger employee amounts to discriminatory adverse action motivated by Mr. Singh's age.

134. Defendants have been clear that they did not intend to reinstate Mr. Singh, yet reinstated younger employees and hired younger employees, which is direct evidence of discriminatory motive.

135. This is exactly the type of "direct evidence" courts have held may be "viewed as directly reflecting the alleged discriminatory attitude." *See Raskin v. Wyatt Co.,* 125 F.3d 55, 60–61 (2d Cir. 1997) (finding that examples of "direct evidence" are "policy documents and evidence of statements or actions by decisionmakers that may be viewed as directly reflecting the alleged discriminatory attitude.").

136. By the actions described above, Defendants, by and through its employees and/or agents, subjected Mr. Singh to discrimination in violation of NYSHRL.

137. As a direct result of Defendants' actions, Mr. Singh has suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorney's fees and costs, and any and all penalties and/or fines.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Age Discrimination in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, § 8-107 *et seq.* ("NYCHRL"))**

138. Mr. Singh hereby repeats and re-alleges each and every one of the above allegations as if fully set forth herein.

139. Mr. Singh was an "employee" within the meaning of the NYCHRL.

140. Defendants were Mr. Singh's "employer" within the meaning of the NYCHRL.

141. The NYCHRL protects everyone over the age of 18 from discrimination based on

age or the perception of age – young and old.

142. Mr. Singh is, and has been at all relevant times, qualified for his position with Defendants.

143. Defendants clearly and intentionally withheld the reinstatement of older employees by placing them on indefinite unpaid leave caused by COVID-19, such as Mr. Singh, while reinstating and hiring younger employees, which is direct evidence of discrimination.

144. This is exactly the type of "direct evidence" courts have held may be "viewed as directly reflecting the alleged discriminatory attitude." *See Raskin v. Wyatt Co.*, 125 F.3d 55, 60–61 (2d Cir. 1997) (finding that examples of "direct evidence" are "policy documents and evidence of statements or actions by decisionmakers that may be viewed as directly reflecting the alleged discriminatory attitude.").

145. By the actions described above, Defendants, by and through its employees and/or agents, subjected Mr. Singh to age discrimination in violation of NYCHRL through an adverse employment decision – an indefinite unpaid leave and allow him to return to work – because of his age.

146. As a direct result of Defendants' actions, Mr. Singh has suffered and continues to suffer harm for which he is entitled to an award of damages, including monetary damages, compensatory damages, reasonable attorneys' fees and costs, and any and all penalties and/or fines.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment and issue:

a. That Defendants are found to have violated the provisions of the New York Labor Law and Fair Labor Standards Act as to Plaintiff;

b. That Defendants' violations as described above are found to be willful;

c. An award to Plaintiff for unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

d. That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and NYLL;

e. That Defendants are found to have violated the provisions of the New York State Human Rights Law and New York City Human Rights Law as to Plaintiff;

f. An award to Plaintiff for his actual damages for lost wages and benefits, including an award of back pay and front pay, compensatory damages for emotional distress sustained by him, punitive damages to deter future unlawful conduct by Defendants, all in amounts to be determined at trial;

g. An award to Plaintiff for the costs of this action, including reasonable attorneys' fees and costs to the fullest extent permitted by all applicable law; and

h. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated:  October 8, 2021
New York, New York

Respectfully submitted,

*Rachel Haskell*

_____
Rachel M. Haskell, Esq.
Christopher Q. Davis, Esq.
The Law Office of Christopher Q. Davis
80 Broad St, Ste 703
New York, New York 10004

Telephone: (646)-430-7930
cdavis@workingsolutionsnyc.com
rhaskell@workingsolutionsnyc.com
*Attorneys for Plaintiff*